UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61121-Civ-ZLOCH
MAGISTRATE JUDGE P.A. WHITE

SCOTT MULVANEY,                        :

    Petitioner,                    :

v.                                     :         <u>REPORT OF</u>
                                                 <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,[1]                   :

    Respondent.                    :
_____

    Scott Mulvaney, a state prisoner confined at Walton Correctional Institution at Defuniak Springs, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions entered in Case No. 00-21914 in the Circuit Court of the Seventeenth Judicial Circuit at Broward County.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the petition, the Court has the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply.

    Mulvaney challenges his convictions on the basis of eight grounds of ineffective assistance of trial counsel. Specifically,

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

he alleges that his lawyer failed to (1) conduct a proper investigation into the crime scene which investigation would have revealed potential defense witnesses, resulted in the impeachment of the testimony of the police witnesses and/or raise the defense of self-defense; (2) obtain a copy of the BOLO, police radio transmissions and other records, tapes or transcripts; (3) advise him of his constitutional right of confrontation and the right to be present at all critical stages of the proceedings; (4) investigate, depose and call George Donnelly, the driver of the Camaro, as a defense witness; (5) object to the state's presentation of knowingly perjured testimony; (6) ensure that the prospective jurors had been properly sworn; (7) impeach the police testimony with relevant evidence (i.e., his clothes); and (8) investigate, depose and call Mr. and Mrs. Morris Solganick as defense witnesses.

The pertinent procedural history of this case is as follows. Mulvaney was charged with two counts of aggravated assault upon a law enforcement officer (i.e., Lieutenant Bamford and Officer Seltzer), one count of aggravated fleeing and eluding, one count of battery on a law enforcement officer (i.e., Sergeant Mize), one count of resisting with violence, and one count of no valid driver's license. See Response to Defendant's Motion for Post Conviction Relief at 1. (DE# 11; Ex. 5). Mulvaney was found guilty after jury trial of all crimes charged except for one count of aggravated assault on a law enforcement officer (Count I as to Lieutenant Bamford). Id. During his sentencing hearing, the trial court removed Mulvaney from the courtroom due to his disruptive behavior and completed the sentencing via closed circuit television in the courthouse.[2] See Mulvaney v. State, 831 So.2d 777 (Fla. 4

---

[2] It is noted that the trial court judge presiding over the trial and sentence proceedings, but not the postconviction proceedings, was the Honorable James I. Cohn, former Broward County Circuit Court Judge and currently United States District Judge.

DCA 2002). Mulvaney was sentenced as an habitual felony offender to multiple terms of imprisonment, totaling thirty years. Mulvaney prosecuted a direct appeal from his sentence on the basis that conducting the sentencing through closed circuit television violated his right to be present. (DE# 11; Ex. 1). The Florida Fourth District Court of Appeal affirmed Mulvaney's sentences, finding that Mulvaney's extremely disruptive behavior at sentencing constituted a waiver of the right to be present. Mulvaney v. State, 831 So.2d 777 (Fla. 4 DCA 2002).

Approximately seven months later, Mulvaney returned to the trial court, filing a pro se motion for postconviction relief with supporting memorandum of law and attached exhibits pursuant to Fla.R.Crim.P. 3.850, raising the identical claims of ineffective assistance of trial counsel presented in this federal proceeding. (DE# 11; Ex. 4). The state filed a response, asserting that Mulvaney was not entitled to postconviction relief in that certain allegations were legally insufficient and Mulvaney had failed to demonstrate that he had received ineffective assistance of trial counsel pursuant to the standard established in Strickland v. Washington, 446 U.S. 668 (1984). (DE# 11; Ex. 5). The trial court entered a written order summarily denying Mulvaney postconviction relief for the reasons asserted by the state in its response, a copy of which was attached to the order. (DE# 11; Ex. 6). Mulvaney took an appeal from the trial court's order, and the Florida appellate court issued a written opinion, reversing in part and remanding the proceeding to the trial court solely on Mulvaney's allegation that trial counsel provided ineffective assistance because he did not investigate and call a potential witness to testify at trial (i.e., the alleged driver of the vehicle, George Donnelly). See Mulvaney v. State, 885 So.2d 1001 (Fla. 4 DCA 2004). The appellate court agreed with the state that Mulvaney's claim was legally insufficient in that Mulvaney had failed to allege that the

prospective witness was available to testify at trial. Id. at 1001. The appellate court, however, found that Mulvaney should be allowed to amend his pleading to properly allege ineffective assistance for failure to call the subject witness. Id. The summary denial as to the other claims was affirmed. Id.

Pursuant to the remand, Mulvaney filed an amended pro se Rule 3.850 motion to properly allege the ground raised here as claim four. (DE# 11; Ex. 8). In its response to the amended motion, the state conceded that Mulvaney had cured the pleading deficiency and that an evidentiary hearing was needed on the subject issue, and the trial court agreed. (DE# 11; Ex. 9, 10). The trial court appointed counsel to represent Mulvaney in the Rule 3.850 proceedings. See Transcript of proceeding conducted on August 5, 2005. (DE# 11; Ex. 11). After extensive evidentiary proceedings were conducted, the trial court entered a written order denying post conviction relief on the subject ground, finding that Mulvaney had not demonstrated that he received ineffective assistance of trial counsel, citing Strickland v. Washington, 446 U.S. 668 (1984). (Order Denying Defendant's Amended Motion for Postconviction Relief (Claim 4))(DE# 11; Ex. 12). Mulvaney, through appointed counsel, appealed the trial court's ruling and the Florida Fourth District Court of Appeal affirmed the denial of postconviction relief in a per curiam decision without written opinion. See Mulvaney v. State, 956 So. 2d 466 (Fla. 4 DCA 2006).

Shortly before all state postconviction proceedings had concluded, Mulvaney came to this Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.[3]

---

[3]Mulvaney also filed a pro se motion to correct illegal sentence, challenging his habitual felony offender sentences as unlawful. (DE# 11; Ex. 16). The motion was denied by the trial court (DE# 11; Ex. 18), and the denial was affirmed on appeal in a decision without written opinion. See Mulvaney v. State, 905 So. 2d 144 (Fla. 4 DCA 2005).

The respondent rightfully does not challenge this petition as time-barred. See 28 U.S.C. §2244(d). The claims presented in this proceeding have also been properly exhausted before the state courts, see 28 U.S.C. §2254(b)(1) and (b)(1)(A) (A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....")[4] warranting review on the merits.[5]

This Court is required to entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). The instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996). The provisions of that statute are, therefore, applicable and provide that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state

---

[4]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

[5]Even if certain portions of the claims raised are technically unexhausted, as asserted by the respondent, this Court will exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). See also Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court.  28 U.S.C. §2254(d)(1), (2). See Williams v. Taylor, 529 U.S. 362, 405-06 (2000).[6]  See also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11 Cir. 2001).[7]

In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11 Cir. 2002) citing, Williams, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal

---

[6]A state court decision is "contrary to" clearly established federal law if a state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision amounts to an unreasonable application of federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case," or (2) "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

[7]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002). See also Hawkins v. Alabama, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

In brief, the facts of this case are as follow.[8] Lieutenant Bamford observed a Camaro driving at an extremely slow rate of speed, without lights, in a residential neighborhood at around 1:30 in the morning. Lieutenant Bamford's suspicions were aroused and he decided to stop the car. As he approached the stopped vehicle, he observed a white male, who he identified as Mulvaney, driving the car. When he came to the rear of the car, the driver drove off at a high rate of speed, then made a U-turn and headed towards the officer who was then standing in the road. The officer jumped out of the path of the oncoming vehicle in order not to be hit. The driver ran a stop sign and a high speed chase ensued, involving a number of other officers, which included Officer Seltzer. Shortly afterwards, the officers found the vehicle off the road, near a pond. The driver had abandoned the vehicle, and Sergeant Mize, a canine officer, conducted a search for the missing driver with his police dog. After Mulvaney was located in a dense, muddy area, Officer Mize yelled to Mulvaney to surrender. When Mulvaney refused to do so, the officer sent his dog to locate Mulvaney. When Officer Mize came to the hiding Mulvaney, Mulvaney refused to be restrained and struck Officer Mize as well as other officers who were on the scene. Mulvaney was ultimately restrained in handcuffs and arrested.

The defense at trial was that Mulvaney had not been driving the car, and that his friend George Donnelly was the driver. Mulvaney was called as a witness and he testified that Donnelly was

---

[8]For a detailed recitation of the facts of this case with citations to the trial transcript, see Mulvaney's brief filed in the direct appeal proceeding. (Initial Brief of Appellant at 3-5)(DE# 11; Ex. 1). See also Trial Transcript. (DE# 11; Ex. 20).

driving his car when the police stopped them and Donnelly took off
at a high rate of speed. He further testified that he pulled the
keys out of the ignition to stop the car, causing the car to land
in a yard. Mulvaney testified that he hit his head on the
windshield and, after Donnelly helped him get out of the car,
Donnelly took off on foot, escaping from the police. Mulvaney
testified that he was injured and after making it to a nearby
house, he ultimately landed in a wooded area where he stayed on the
ground for at least forty-five minutes before hearing someone yell
to him to "give up." He was then handcuffed. Gina Santacroce was
also called as a defense witness and she testified that she had
seen Mulvaney at 11:30 P.M. that evening to obtain money owed to
her by Mulvaney and at that time he was with Donnelly who had been
driving Mulvaney's car. Mulvaney's girlfriend, Leslie Kricun,
testified that the driver's side window of Mulvaney's car was never
lowered. On rebuttal, Officer Handler testified that Mulvaney had
told him that an African-American male, whom he did not know, was
driving his car.

Mulvaney alleges that he received ineffective assistance of
trial counsel for eight enumerated reasons. To prevail on a claim
of ineffective assistance, a petitioner must demonstrate both that
his attorney's efforts fell below constitutional standards, and
that he suffered prejudice as a result.[9] Strickland v. Washington,

---

[9]When assessing a lawyer's performance, "Courts must indulge the strong
presumption that counsel's performance was reasonable and that counsel made all
significant decisions in the exercise of reasonable professional judgment."
Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied,
531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of
counsel claims is not to "grade a lawyer's performance; instead, [the court]
determine[s] only whether a lawyer's performance was within "the wide range of
professionally competent assistance." Van Poyck v. Florida Dept. of Corrections,
290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting,
Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to
be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994),
and second-guessing of an attorney's performance is not permitted. White v.
Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start
presume effectiveness and should always avoid second-guessing with the benefit
of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). A claim

466 U.S. 668 (1984). Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. <u>Strickland v. Washington</u>, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Id</u>. at 690-91. For the reasons stated immediately below, the trial court's determinations that Mulvaney was not entitled to postconviction relief on his claims of ineffective assistance of counsel, which decisions were affirmed on appeal, <u>see Mulvaney v. State</u>, 885 So.2d 1001 (Fla. 4 DCA 2004); <u>Mulvaney v. State</u>, 956 So. 2d 466 (Fla. 4 DCA 2006), were not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[10] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Mulvaney alleges in ground one that he received ineffective assistance of trial counsel, because his lawyer failed to conduct a proper investigation into the crime scene and such an investigation would have revealed potential defense witnesses

---

of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

[10]The appellate court's decision affirming the denial of Petitioner's Rule 3.850 motion and amended Rule 3.850 motion without written opinion constitutes an "adjudication on the merits," and is thus entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Mulvaney is only entitled to relief if the state appellate court's rejection of his claim was directly contrary to, or was an unreasonable application of, clearly established federal law. <u>Id</u>. at 1253-56. <u>See also Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decisions affirming the denial of Petitioner's Rule 3.850 motion and amended Rule 3.850 motion were not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

(i.e., Gilbert Hernandez), would have provided impeachment of the police witnesses and/or raise the defense of self-defense.[11] It is evident from the record that trial counsel did properly investigate the facts of the case and had investigated all possible defenses, contrary to Mulvaney's assertion. The record reflects that before trial, counsel deposed all of the law enforcement officers involved in the case. <u>See</u> Response to Defendant's Motion for Post Conviction Relief at 4. At trial, counsel cross-examined each officer extensively, indicating his command of the facts of the case, and at times used the testimony obtained during the pretrial depositions to impeach the officers' in-court testimony, especially regarding the testimony that Mulvaney had deliberately attempted to run into Lieutenant Bamford and Officer Seltzer. <u>See e.g</u>., Trial Transcript at 430-32.

Defense counsel also called four witnesses, including Mulvaney, in support of the defense that Mulvaney had only been a passenger in the vehicle and that the true driver had fled the scene long before the officers found Mulvaney and that Mulvaney had never attacked Officer Maze but, instead, Mulvaney had been physically attacked by the officer and his dog. <u>Id</u>. at 590-619. During closing argument, counsel meticulously pointed out the conflicts in the evidence and argued that based upon what had occurred, the officers' testimony lacked truthfulness and credibility. <u>Id</u>. at 623-86. The defense was in fact successful

_____

[11]Effective assistance of counsel embraces adequate pretrial investigation. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>See also</u> <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." <u>Id</u>. at 1263, <u>quoting</u>, <u>House v. Balkcom</u>, 725 F.2d 608, 615, 617-18 (11 Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 870 (1984). Although counsel has no absolute duty to investigate particular facts or a certain line of defense, a complete failure to investigate may constitute deficient performance of counsel in some circumstances. <u>See</u> <u>Crawford v. Head</u>, 311 F.3d 1288, 1297 (11 Cir. 2002).

regarding the offense of aggravated assault on law enforcement officer, Lieutenant Bamford, as charged in Count I of the information.

Also, review of counsel's *voir dire* of Sergeant Mize, before he was accepted as an expert in the area of canine tracking, reveals that counsel's questioning was thorough and appropriate in his attempt to disqualify the officer as an expert in the relatively new field of canine tracking and prevent him from offering his opinion regarding the field. See Trial Transcript at 483-85. Albeit unsuccessful, defense counsel then argued that the officer should not be accepted as an expert witness in that the field of canine tracking was lacking in scientific reliability and that the particular officer was not subject to peer review. Id. at 485. On cross-examination, defense counsel attempted to minimize the importance of the officer's testimony and demonstrate that his verison of the events was incredible by pointing out, for example, that the officer had no personal knowledge who, and how many people, had been in the car before the crash, that he was not an accident reconstructionist so that he could not have known how fast the car had been traveling before the impact, etc. Id. at 522-38. Also, counsel challenged the officer's testimony given during direct examination that the subject area was muddy and like quicksand by asking the officer whether he had had to carry his dog at any time during the search. Id. at 529. When the officer answered in the negative, the officer was then required to explain that only part of the area was quicksand. Id. As indicated in more detail below, Mulvaney appears to identify a number of perceived conflicts in evidence which he claims that defense counsel should have brought to the jury's attention. Defense counsel did in fact meticulously challenge the state's evidence and the fact that certain of these now-alleged inconsistencies were not brought before the jury does not mean that counsel performed deficiently

and/or that Mulvaney suffered prejudice as a result.

Regarding counsel's failure to call prospective witness Gilbert Hernandez,[12] other than Petitioner's unsupported allegation, there is no competent evidence of record that this prospective witness would have provided exculpatory testimony and/or was available to testify as a witness at the time of trial.[13] The lack of a specific, affirmative showing of any exculpatory evidence leaves Petitioner's claim purely speculative and well short of the prejudice required by Strickland. Speculation about what witnesses could have said is not enough to establish prejudice. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). See also White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.") Further, the record reveals that defense counsel was aware of Hernandez and he had subpoenaed him to appear for the taking of his deposition, but he failed to appear. See Letter from defense counsel Kasen to Mulvaney dated May 12, 2001. (Exhibit attached to Motion for Post Conviction Relief). Based upon Hernandez's failure to appear for the scheduled pretrial deposition, without explanation, counsel's failure to take additional action, apparently believing that Hernandez was unreliable and would not appear at trial, even if subpoenaed, was reasonable. Accordingly, counsel's performance was not constitutionally ineffective as alleged in ground one.

Mulvaney claims in ground two that his lawyer's performance

---

[12]From review of exhibits attached to Mulvaney's state postconviction motion, Mulvaney contends that Hernandez had witnessed his vehicle being pulled over by the police at 11:30 P.M. See Letter from Mulvaney to former Broward County Circuit Court Judge James I. Cohn dated September 13, 2001.

[13]Mulvaney has not supported his claim with an affidavit from the prospective witness regarding his intended testimony or his availability as a witness at the time of the trial.

was constitutionally ineffective when he failed to obtain a copy of the BOLO, police radio transmissions and other records, tapes or transcripts of the incident. Mulvaney states that while the police officers testified that the stop occurred at 1:30 A.M., the BOLO alert was instead issued at 12:00 A.M. or earlier and such a discrepancy in the time of the incident would have provided valuable impeachment evidence against the officers. He further maintains that the discrepancy also lended credence to his defense that he had not been the driver and the true driver had escaped.

This claim is meritless. As indicated above, it is evident from the record that Mulvaney's lawyer had properly investigated the facts of the case. Other than Mulvaney's unsupported allegations, there is no competent evidence of record that the BOLO transmission was in fact available and/or that any other records maintained by the police regarding the subject incident would have provided exculpatory testimony.[14] Again, speculation about what evidence might have revealed is not enough to establish prejudice. "Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." Brownlee v. Haley, 306 F.3d 1043, 1060 (11 Cir. 2002), citing, Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir.1985). See also Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11 Cir. 1983). See also Waters v. Thomas, 46 F.3d 1506, 1512 (11 Cir. 1995)("Which witnesses, if any, to call, and when to call them, is

---

[14]It is noted that in this federal proceeding, as was true in the state postconviction proceedings, Mulvaney has not supported his claim with any documents. Further, Sergeant Mize unequivocally testified at trial that he became aware of the subject incident when he heard it broadcasted at 1:30 A.M. by Lieutenant Bamford over the police radio. (Trial Transcript at 486).

the epitome of a strategic decision and it is one that [the courts]
will seldom, if ever, second guess."); <u>Chandler v. United States</u>,
218 F.3d 1305, 1314 (11 Cir. 2000)(<u>en banc</u>), <u>cert</u>. <u>denied</u>, 531 U.S.
1204 (2001) (holding that counsel cannot be deemed incompetent for
performing in a particular way in a case as long as the approach
taken "might be considered sound trial strategy")(<u>quoting</u> <u>Darden v.</u>
<u>Wainwright</u>, 477 U.S. 168 (1986)).

    The record reveals that the officers unequivocally testified
at trial that Mulvaney was first spotted by Sergeant Lieutenant
Bamford at approximately 1:30 A.M., that the abandoned vehicle was
discovered approximately five minutes later and that Mulvaney was
found approximately twenty-five minutes after that. <u>See</u> Trial
Transcript at 405, 420, 438, 486. Mulvaney was called as a defense
witness and he testified that the incident had instead occurred at
approximately 11:30 P.M., which was approximately two hours before
the time that all of the police officers had testified that it had
taken place. <u>See</u> Trial Transcript at 405-06, 420, 448, 461, 465,
486, 604-18. During closing argument, in an attempt to challenge
the credibility of the police officers and the veracity of their
testimony regarding the subject incident, defense counsel pointed
out the discrepancy between Mulvaney's testimony and that of the
officers regarding the timing of the incident. <u>Id</u>. at 682-83. It is
important to note that counsel attempted to use the lack of any
radio transmission recordings to the advantage of the defense to
support the argument that the state had failed to sustain its
burden and prove the charges beyond a reasonable doubt.[15] Through

_____

    [15]Specifically, defense counsel stated during closing argument as follows:

    But Ms. Santacroce, I think, was the most critical witness, because she has
    the ability to tell you that Scott Mulvaney, when she saw him in [the] late
    evening hours of December 21st, 2000, was not in the driver's seat.

    Let's come back to that issue, if we can. *Where is the dispatch tape to tell*
    *you when Lieutenant Bamford called in that license plate? It would have been*
    *nice, I think, also important to bring that in to buttress the officers['*]
    *argument.*

closing argument,  counsel was trying to cast doubt on the state's version of the events and demonstrate that the defense presented that Mulvaney had not been the driver of the vehicle and that there had been sufficient time for the true driver to flee the scene before the officers arrived was more credible than the state's version of the events. Mulvaney has, therefore, failed to demonstrate that counsel's apparent strategic decision not to obtain the subject records, even if they had existed, was outside the bounds of reasonable professional judgment. The fact that the jury chose to find the testimony of the officers' credible and not believe the defense presented, does not mean that counsel rendered constitutionally ineffective assistance of counsel, as alleged. See Strickland, supra.

Mulvaney claims in ground three that trial counsel rendered ineffective assistance when he failed to advise him of his constitutional right of confrontation and the right to be present at all critical stages of the proceedings. While Mulvaney does not specify in this habeas corpus case which proceedings he is referring to it appears as if he is referring to pretrial conferences and/or pretrial depositions since those were enumerated in his state postconviction motion. He claims that he never waived his right to be present at such proceedings. Mulvaney is not

---

If it comes in, more difficult for Mr. Mulvaney himself to say well, I guess contact was at one-thirty. We don't know any of that. We are not obligated to submit any of this. It is not my obligation to prove. It is that young lady's [prosecutor Sarahnell Murphy], ladies and gentlemen.

She's got the obligation to put up. The reality is, it is very easy to simply call in for a dispatch tape. Bring it in. Let's hear what Lieutenant Bamford said.

I have got the dispatch tape. Here is the time I called in license plate number. She is arguing it took place at one-thirty. All officers said that. That's because they all work together.

Could it have happened at eleven-thirty? Sure. Any evidence to prove it did not happen at eleven-thirty? No. Other than the testimony of these officers, for what that's worth. They all work together.

(emphasis added)(Trial Transcript at 682-83).

entitled to federal habeas corpus relief on this claim.

The right of an accused to be present and participate during all critical stages of the trial is basic and fundamental. <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985); <u>Rushen v. Spain</u>, 464 U.S. 114, 117 (1983). A defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure. <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987). In Florida, those stages include pretrial conferences, if not waived, all proceedings before the court when the jury is present, and when evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury selection. <u>See</u> <u>Fla.R.Crim.P</u>. 3.180(a)(4), (5), (6). <u>See also</u> <u>Fla.R.Crim.P</u>. 3.220(p). However, a defendant has no constitutional right to be present for proceedings involving purely legal matters. <u>See</u> <u>In re Shriner</u>, 735 F.2d 1236 (11 Cir. 1984)(holding that there is no constitutional right to be present at the bench during conferences that involved purely legal matters). <u>See also</u> <u>United States v. Burke</u>, 345 F.3d 416 (6 Cir. 2003)(finding no constitutional right to be present at pretrial suppression hearing); <u>Provenzano v. Singletary</u>, 3 F.Supp.2d 1353, 1377 (M.D.Fla. 1997)(holding that hearing on motion to dismiss and suppression hearing "involved essentially legal argument, and there was no constitutional right to be present at such proceedings.") The Florida courts have similarly held that a defendant has no constitutional right to be present at the bench during conferences that involve purely legal matters. <u>Hardwick v. Dugger</u>, 648 So.2d 100, 105 (Fla. 1994).

The record does not contain any indication whatever that there were any pretrial conferences and, even if such conferences had taken place, that those conferences involved more than legal

matters. Mulvaney has not supported his assertion with an affidavit from counsel or any other form of reliable evidence, such as, portions of the record indicating that such conferences in fact took place. Mulvaney's claim is, therefore, wholly conlusory with no substantiation in the record. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979); King v. United States, 565 F.2d 356 (5 Cir. 1978); Clayton v. Estelle, 541 F.2d 486 (5 Cir. 1976).

Regarding the pretrial depositions, contrary to Mulvaney's apparent belief, he did not have an unconditional right to attend the pretrial depositions. Florida's discovery rule, as it relates to pretrial discovery depositions, provides as follows:

> (7) *Defendant's Physical Presence.*-A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule. The court may order the physical presence of the defendant on a showing of good cause. The court may consider (A) the need for the physical presence of the defendant to obtain effective discovery, (B) the intimidating effect of the defendant's presence on the witness, if any, (C) any cost or inconvenience which may result, and (D) any alternative electronic or audio/visual means available.

Fla.R.Crim.P. 3.220(h)(7). Further, in Florida, "[c]ases requiring

the defendant's presence are the exception rather than the rule."
Fla. R.Crim. P. 3.220 comm. note (1989).

     As to his claim that his absence from the depositions violated
his confrontation clause rights,[16] even if this Court were to find
that defense counsel's performance was deficient in some way for
not ensuring Mulvaney's presence at the pretrial depositions,
Mulvaney has failed to satisfy the second-prong of Strickland,
prejudice. In Florida, in order for Mulvaney's absence to result in
a Confrontation Clause violation, the deposition must have been
admitted as substantive evidence.[17] See Conner v. State 748 So.2d
950, 956 (Fla. 1999), citing, State v. Clark, 614 So.2d 453 (Fla.
1992)(finding a Confrontation Clause violation constituted harmful
error where a discovery deposition taken outside the presence of
the defendant was admitted as substantive evidence). That did not
occur in the instant case. Thus, Mulvaney's right to confrontation
and cross-examination was not impeded by his nonattendance at the

_____

     [16]The Confrontation Clause of the Sixth Amendment affords the accused the
right "to be confronted with the witnesses against him." U.S. Const. amend. VI.
The primary purpose of the Confrontation Clause is to prevent out-of-court
statements from being used against a criminal defendant in lieu of in-court
testimony subject to the scrutiny of cross-examination. See Douglas v. Alabama,
380 U.S. 415, 418-19 (1965). The Sixth Amendment's Confrontation Clause is
applicable in state criminal trials via the Fourteenth Amendment. See Douglas
v. Alabama, 380 U.S. 415, 418, (1965); Pointer v. Texas, 380 U.S. 400, 404
(1965). In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme
Court held that the Confrontation Clause bars the admission of "testimonial
statements of witnesses absent from trial" unless the declarant is unavailable
and the accused had a prior opportunity to cross-examine the declarant. Crawford
v. Washington, 541 U.S. at 59. Mulvaney does not cite to Crawford v. Washington,
541 U.S. 36 (2004) as support for his claim but, even if he did, his argument
would be unavailing. The Supreme Court has held that Crawford does not apply
retroactively to collateral proceedings, such as the instant habeas petition.
Whorton v. Bockting, ___ U.S. ___, 127 S.Ct. 1173 (2007). Mulvaney's convictions
became final on direct review in 2003, before Crawford was decided.

     [17]Confrontation Clause violations are subject to the harmless error
analysis. Delaware v. Van Arsdall, 475 U.S. 673, 681-84 (1986)(stating that
factors readily accessible to reviewing courts for the determination whether an
error is harmless in Confrontation Clause cases include the importance of the
witness' testimony in the prosecution's case, whether the testimony was
cumulative, the presence or absence of evidence corroborating the testimony of
the witness on material points, the extent of cross examination otherwise
permitted, and of course the overall strength of the prosecution's case).

depositions since any deposed witnesses testified at trial and were then subject to cross-examination. It is noted that the depositions of the witnesses would only be admissible for impeachment purposes pursuant to Florida Rule of Criminal Procedure 3.190(j). See State v. Basiliere, 353 So.2d 820 (Fla. 1978); State v. Dolen, 390 So.2d 407 (Fla. 5 DCA 1980). Mulvaney did not receive constitutionally ineffective assistance of counsel, as alleged in ground three. See Strickland, supra.

Mulvaney alleges in ground four that his lawyer failed to investigate, depose and call George Donnelly, the purported driver of the Camaro, as a defense witness. Pursuant to the remand of the appellate court, the trial court conducted evidentiary proceedings on this issue. On August 5, 2005, the trial court appointed counsel to represent Mulvaney during the proceeding. (Transcript of hearing conducted on August 5, 2005)(DE# 11; Ex. 11). The evidentiary hearing did not take place until several months later due in part to the inability to locate Donnelly. Specifically, during proceedings conducted on August 12, 2005, postconviction counsel advised the court that he needed time to find the subject missing witness, George Donnelly, and he asked the court to reset evidentiary proceedings until the middle of September so that his investigator could locate Donnelly. (Transcript of proceedings conducted on August 12, 2005)(DE# 11; Ex. 11). On September 16, 2005, defense counsel advised the court that Donnelly had been located at the Levy County Jail, he had been interviewed, but Donnelly had since been released. (Transcript of hearing conducted on September 16, 2005, at 2)(DE# 11; Ex. 11). Counsel then requested additional time so that Donnelly could be found and contact made so that his presence could be obtained for the hearing. Id. at 2-3. The trial court granted the defense request and reset the hearing for November 4, 2005. Id. at 4.

Apparently, Donnelly had not been found at the time the hearing was rescheduled and proceedings were next conducted almost three months later, on December 9, 2005. (Transcript of hearing conducted on December 9, 2005)(DE# 11; Ex. 11). During the proceeding, defense counsel called as a witness Benito Capabianco, the investigator retained by post-conviction counsel, and he testified that postconviction counsel had retained him on August 12, 2005, that he had conducted an exhaustive search through the States of Georgia and Florida to find Donnelly, and that he ultimately located Donnelly at the Levy County Jail. Id. at 7-10. Due to the prosecutor's objection on the basis of hearsay, defense counsel was then permitted to proffer Capabianco's testimony as follows. Id. at 10-8. Capabianco testified that he conducted an interview of Donnelly at the Levy County Jail and that Donnelly had told him that he and Mulvaney had been co-workers and that they often socialized after work. Id. at 10-19. Capabianco testified that Donnelly said that he remembered the subject evening and remembered being chased by the police. Id. at 19-20. Capabianco testified that when he asked Donnelly who had been driving the car, Donnelly stated that he (Donnelly) was the driver. Id. The investigator testified that Donnelly indicated a willingness to come to Broward County to assist Mulvaney and the investigator gave Donnelly a subpoena for a September 16, 2005, hearing, but later released Donnelly from it because it was only a status hearing Id. at 22. Donnelly said he would come to Broward for the next hearing date, November 2, 2005, however, the next hearing was canceled because of a hurricane. Id. at 22-3. Capabianco contacted Donnelly when the hearing was reset to December 9, 2005, and a bus ticket was purchased for Donnelly. Id. at 23-5. Donnelly never retrieved the bus ticket or returned telephone calls, and did not appear for the hearing. Id. at 23-6. Capabianco testified that he did not subpoena Donnelly because Donnelly was cooperative. Id. at 26.

Mulvaney was called as a witness at the hearing and he testified in his own behalf, that he had not been the driver of the vehicle at the time of the subject incident, that George Donnelly was the driver, that he advised trial counsel that Donnelly had been the driver, he provided counsel with information about Donnelly, and Donnelly was never called at trial as a witness. Id. at 29-34. It was revealed during cross-examination that he had only told counsel of Donnelly's first name, not his surname. Id. at 34. At the conclusion of the testimony, the trial court sustained the state's objection to the testimony regarding Donnelly's statements, found it inadmissible hearsay, and excluded it as evidence. Id. at 27-8. Postconviction counsel then moved for one last continuance to procure Donnelly's presence by subpoena, and the matter was reset for January 13, 2006. Id. at 35-6.

Defense counsel was unable to secure Donnelly's attendance at the next hearing, resulting in counsel resting for the defense. (Transcript of proceeding conducted on January 13, 2006, at 3-4)(DE# 11; Ex. 11). Counsel renewed his objection to the exclusion of Capabianco's testimony. Id. The state next called as its sole witness, former trial counsel Jonathan Kasan. Id. at 4-11. Kasan testified in pertinent part that when he had deposed Mulvaney's former employer, Jody Silver, Silver had testified that Mulvaney told him that Donnelly had been in the car with him that night, that Donnelly ran from the police because there had been an active warrant for Donnelly's arrest, and that Donnelly had fled to the State of Tennessee. Id. at 7. Kasan further testified that Silver stated during his deposition that he (Silver) had personally received a telephone call from Donnelly in which Donnelly told him that he (Donnelly) had not been driving the car and Donnelly expressed anger against Mulvaney for Mulvaney implicating him in the incident and he stated that he would have a physical altercation with Mulvaney and he would not assist Mulvaney in the

criminal proceeding. Id. at 8. Counsel further testified that
Silver had indicated that he would attempt to provide counsel with
Donnelly's address before trial and that Silver failed to do so and
Mulvaney never provided any specific information regarding
Donnelly. Id. at 8-9. Former trial counsel testified that if
Donnelly had been called as a witness and testified that he had
been the driver then Donnelly was exposing himself to criminal
liability for a majority of the subject charges which could have
resulted in imprisonment of at least fifteen years. Id. at 10. At
the request of the defense, the trial court granted one more
continuance to permit postconviction counsel to call Leslie Kricun,
Mulvaney's girlfriend at the time of the subject criminal incident,
as a rebuttal witness. Id. at 21-2. Kricun testified that Mulvaney
told her that he had not been the driver of the car and that
Donnelly had been the driver and that she had communicated this
information to trial counsel during her many meetings and telephone
calls with him. (Transcript of proceedings conducted on January 20,
2006, at 5-7)(DE# 11; Ex. 11).

     After having reviewed the entire criminal court file, the
trial court entered a careful and well-reasoned written order,
denying the motion. (Order Denying Defendant's Amended Motion for
Post Conviction Relief (Claim 4))(DE# 11; Ex. 12). In its order,
the court stated in pertinent part as follows:

> [Mulvaney] testified at the 3.850 evidentiary hearing that his
> trial counsel was ineffective because he failed to locate and
> have testify at trial, George Donnelly, who according to
> [Mulvaney] was the actual driver of the car in the instant
> case. George Donnelly would not have been called as an alibi
> witness, but to admit at trial that he was the actual driver
> of the car and the one responsible for the Aggravated Fleeing
> and Eluding, for which [Mulvaney] was charged.
>
> Trial counsel, Jonathan Kasan, testified at the hearing that
> prior to trial [Mulvaney] told him that George Donnelly was in
> the car at the time of the incident and described him as a
> black male. [Mulvaney] was not able to give Mr. Kasen any
> further information about George Donnelly, other [than] that

he was staying at Tim's in Hollywood. Mr. Kasen deposed Jody
Silver, [Mulvaney's] employer, who stated that George Donnelly
had told him that he was not in the car at the time of this
incident and that he was angry that [Mulvaney] kept
implicating him. Jody Silver also informed Mr. Kasen that
George Donnelly could have moved to Tennessee.

The 3.850 evidentiary hearing was continued twice. Once, to
allow [Mulvaney] to secure the attendance of [Mulvaney's]
girlfriend as a witness at the hearing. She did not appear to
testify at the continuation of the hearing. The hearing was
continued a second time to allow [Mulvaney] to secure the
attendance of George Donnelly, who after having been located
and provided funds by the defense for transportation to Fort
Lauderdale, failed to appear and testify at the hearing.

The evidence shows that trial counsel made reasonable efforts
to locate George Donnelly prior to trial. Trial counsel indeed
investigated Donnelly as a potential witness as per
[Mulvaney's] instructions. Trial counsel's inability to call
a witness, who is unavailable to testify at trial, is not a
deficiency on the part of trial counsel that would prejudice
the outcome of a defendant's trial. [citation omitted]. The
evidence shows that George Donnelly was not available to
testify at the postconviction evidentiary hearing. The
evidence thus does not support [Mulvaney's] claim that trial
counsel was deficient in not calling this witness. There has
been no showing of deficiency on the part of trial counsel,
which is the first prong of the Strickland test and thus
[Mulvaney] was not prejudiced by trial counsel's performance.

Id. at 1-2. See Mulvaney v. State, 956 So. 2d 466 (Fla. 4 DCA
2006).

Thus, after listening to the witnesses' testimony provided at
the extensive evidentiary proceedings, the trial court implicitly
found former trial counsel's testimony credible. Determinations of
credibility are best made by the trial court judge, who can assess
the demeanor and candor of the witnesses. Gore v. Secretary for
Dept. of Corrections, 492 F.3d 1273, 1300 (11 Cir. 2007)(noting
that while reviewing court also gives a certain amount of deference
to credibility determinations, that deference is heightened on
habeas review), citing, Rice v. Collins, 546 U.S. 333, 341-42
(2006)(stating that "[r]easonable minds reviewing the record might
disagree about the [witness'] credibility, but on habeas review

that does not suffice to supersede the trial court's credibility
determination"). <u>See also</u> <u>Baldwin v. Johnson</u> 152 F.3d 1304, 1317
(11 Cir. 1998), <u>citing</u>, <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434
(1983)("Title 28 U.S.C. §2254(d) gives federal habeas [corpus]
courts no license to redetermine credibility of witnesses whose
demeanor has been observed by the state trial court, but not by
them."); <u>Smith v. Kemp</u>, 715 F.2d 1459, 1465 (11th Cir.)("Resolution
of conflicts in evidence and credibility issues rests within the
province of the state habeas court, provided petitioner has been
afforded the opportunity to a full and fair hearing."), <u>cert</u>.
<u>denied</u>, 464 U.S. 1003 (1983).

Thorough review of the record in this case yields no
suggestion that the trial court's findings of fact made during the
state postconviction proceeding where the subject issue was raised
were not supported by the record or were otherwise deficient.
Because Mulvaney has not rebutted the trial court's findings of
fact by clear and convincing evidence, the findings are presumed
correct.[18] <u>See</u> 28 U.S.C. §2254(e)(1). Based upon the court's
findings and credibility determinations, the trial court properly
ruled, after applying the appropriate standard established in
<u>Strickland v. Washington</u>, 446 U.S. 668 (1984), that Donnelly was
not entitled to postconviction relief in that counsel's performance

_____

[18]Federal courts in habeas corpus proceedings are required to grant a
presumption of correctness to state court's explicit and implicit findings of
fact, if supported by the record. <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5 Cir.
1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). If it is clear that the trial court
would have granted the relief sought by the petitioner had it believed the
testimony of certain witnesses, "its failure to grant relief was tantamount to
an express finding against the credibility of [those witnesses]." <u>Marshall v.</u>
<u>Lonberger</u>, 459 U.S. 422, 433 (1983), <u>citing</u>, <u>LaVallee v. Delle Rose</u>, 410 U.S. 690
(1973). The presumption of correctness afforded factual findings of state courts
applies equally to factual determinations made by state trial and appellate
courts. <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981). Although the Court in <u>Sumner</u>
was interpreting Section 2254 as it existed pre-AEDPA, the holding hinged on the
fact that no distinction was made between state trial and appellate courts in the
pre-AEDPA version of section 2254, a fact which continues to be true of the
current version of the statute. <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11 Cir.
2003).

had not been deficient for failing to call Donnelly as a witness in that counsel had taken all reasonable steps to locate Donnelly, but Donnelly could not be found at the time of trial. <u>Id</u>.

Donnelly asserts that this Court should reject the trial court's ruling in that it incorrectly applied the *Strickland* standard, only making a determination as to deficient performance. Even if this Court were to agree with Mulvaney, the trial court correctly determined that Donnelly could not satisfy the first prong of <u>Strickland</u>, deficient performance. No evidence admitted during the postconviction proceeding demonstrated that Donnelly could have been located at the time of trial and the evidence indicates that counsel had taken reasonable efforts to find him. Based upon the record, the trial court's determination that Mulvaney failed to satisfy the first prong of *Strickland* is proper and the trial court need not have gone on to reach the prejudice-prong. It is beyond dispute that unless a movant satisfies *both* prongs of the *Strickland* inquiry, relief should be denied. <u>Strickland</u>, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. <u>Id</u>. at 697 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one.")

Moreover, it appears that the trial court did in fact properly find that Mulvaney could also not demonstrate that he had been *prejudiced* by the alleged deficient performance. This determination is correct even if this Court were to conclude that Donnelly's hearsay evidence should have been deemed admissible during the postconviction proceeding.[19] It cannot be forgotten that even if

---

[19]Any assertion by Mulvaney that the trial court in the postconviction proceeding improperly failed to consider Donnelly's hearsay statements as testified to by the private investigator is meritless for the reasons expressed by the respondent in his response. <u>See</u> Response to Order to Show Cause at 14. <u>See</u>

located, Donnelly would have had to testify at the time of trial that he had been the driver of the vehicle, not Mulvaney. To so testify, Donnelly would have incriminated himself in several of the charged felony offenses and subjected himself to prosecution to offenses that could have resulted in a minimum term of imprisonment of fifteen years, if found guilty. The likelihood that he would have done so for a coworker that he occasionally socialized with is highly unlikely and, as pointed out by former trial counsel at the evidentiary hearing, would be like a "Perry Mason episode." (Transcript of proceeding conducted on January 13, 2006, at 10). It cannot be overlooked that when counsel deposed Silver before trial, trial counsel had information that Donnelly fled the scene of the crime and that Donnelly denied involvement and was angry at Mulvaney for saying Donnelly was driving. Donnelly's failure to appear at the post-conviction hearing even after the statute of limitations had apparently run on the subject crimes is certainly a strong indication that Donnelly was unwilling to take responsibility for the crimes even if he had been the driver. Thus, no admissible evidence was presented that Donnelly would admit at trial that he had been the driver or even make such an admission at the later  post-conviction hearing. Even accepting Mulvaney's assertions at true, the record reveals at best that Donnelly had fled the scene of the crime, and then the State of Florida, because of an outstanding warrant. Given the facts of the case, it was not unreasonable for trial counsel to conclude that Donnelly would not have been helpful and could be harmful by implicating Mulvaney, even if Donnelly could be located and compelled to testify. Further, defense counsel was able to present the same defense through Mulvaney's testimony and that of the other defense witnesses. Mulvaney has failed to show that there is a reasonable probability that, but for the alleged errors, the result of the

_____

also Transcript of proceedings conducted on December 9, 2005, at 14-8, 27-9.

proceeding would have been different. Strickland, 466 U.S. at 694. Thus, Mulvaney can also not satisfy the second prong of *Strickland*, prejudice, as ruled by the trial court.[20]


Mulvaney claims in ground five that his lawyer improperly failed to object to the state's presentation of knowingly perjured testimony. Specifically, he maintains that the officers lied when they testified that the airbags of his car had deployed, that the driver's side window was down, that the vehicle had been stopped at 1:30 A.M., and that area where Mulvaney was found was muck and mud, waist-deep. Success on a claim of prosecutorial misconduct requires a showing that the conduct infected the trial with unfairness as to make the resulting conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). A defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). There is no evidence whatever of perjured testimony and/or false evidence and/or prosecutorial misconduct. The fact that Mulvaney takes issue

---

[20]Petitioner also appears to allege that he was denied a fundamentally fair trial due to the impact of cumulative errors committed by defense counsel. For the reasons stated herein, Petitioner is not entitled to habeas corpus relief on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the trial with unfairness as to deny Petitioner a fundamentally fair trial and due process of law. Petitioner is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect.") Contrary to Mulvaney's apparent assertion, the result of the trial was not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing. United States v. Cronic, 466 U.S. 648, 659 (1984).

with the testimony of the state witnesses does not mean that such testimony was untruthful or a product of misconduct on the part of the state. Counsel's performance was, therefore, not deficient for failing to challenge the evidence on this basis. Strickland, supra.

Additionally, review of the record reveals that Mulvaney suffered no prejudice as a result of the alleged inaction. As indicated above, defense counsel vigorously conducted cross-examination of the police officers, pointing out to the jury any conflicts in the evidence. See e.g., Trial Transcript at 425-37, 464-69, 521-24. Counsel also actively pursued the defense theory that it was a George Donnelly who had been the driver, not Mulvaney. In support of the defense, Mulvaney was called as a witness in his own behalf and he testified as to his version of the subjects events, which differed from the testimony of the officers regarding who had been driving the vehicle. Id. at 590-619. Specifically, as to the window, Mulvaney testified that the driver side window of his car was never lowered because it never worked, although the passenger side was operable. Id. at 594-95. Mulvaney also testified that he ultimately landed in a grassy area, and there was no muck or mud. Id. at 613. Mulvaney called Jody Silvers, Mulvaney's former employer, and Leslie Kricun, as defense witnesses and they both testified that they had been inside Mulvaney's car on multiple occasions, that in the month of the subject incident they had not seen the driver's side window in the down position, and they had never seen the window lowered. Id. at 567-68, 570-71, 572-74. Also, Gina Santacroce, an acquaintance of Mulvaney, was called as a defense witness and she testified that at approximately 11:30 P.M., she saw Mulvaney in the passenger seat of his vehicle and that the passenger seat window was lowered, but not the driver's window. Id. at 579-82. She further testified that she had never seen the driver's side window lowered. Id. at 587.

Defense counsel also vigorously challenged the testimony of the state witnesses during his closing argument, pointing out the conflict in the testimony given.[21] Id. at 665-86. It is also noted that while Lieutenant Bamford and Officer Seltzer testified that they had been able to view the sole occupant of the vehicle through the driver's side window, they also testified that he was visible through the windshield and back rear window. See Trial Transcript at 412, 428, 452-53. As was the prerogative of the jury, it rejected the defense presented, and instead believed the strong evidence admitted by the state, which included the victim's testimony. This Court must defer to the jury's judgment as to the

---

[21]For example, defense counsel argued as follows:

> And the interesting part about the whole situation, ladies and gentlemen, is that miraculously Lieutenant Bamford can see through a open driver's side window. [Prosecutor] Ms. Murphy went through quite a bit of handringing effort to explain all different ways Lieutenant Bamford could have seen unobstructed into that car.

> Let's talk about that for a moment. You heard Lieutenant Bamford in his own words say to you I was making an approach to the car on the back left panel. As soon as I got there the car started to pull away.

> \*        \*        \*

> And, the back windows were all tinted. That will make it more difficult to see in there, whether Lieutenant Bamford wants to admit that or not, or answer that truthfully or not.

> Ladies and gentlemen, use your common sense. A prosecutor likes to tell you don't leave your common sense at the front door. I ask you to do the same.

> He says he sees Mr. Mulvaney with the window of the driver's side, with the window down. We had four different witnesses all coming into tell you they have never seen that driver's side window down. Never. Not one time.

> You heard Mr. Mulvaney tell you where he bought the car, when he bought the car that window was broken from the get-go. How is it he's looking through the window that is never down?

(Trial Transcript at 665-67).

weight and credibility of the evidence.[22]  See <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987). Accordingly, defense counsel did not render constitutionally ineffective assistance, as alleged in ground five. See <u>Strickland</u>, <u>supra</u>.

Mulvaney claims in ground six that trial counsel improperly failed to ensure that the prospective jurors had been properly sworn.[23] This claim is meritless, as refuted by the record. Review of the transcript of the <u>voir dire</u> proceedings indicate that the trial court judge conducted the jury selection for three separate cases from the same venire. <u>See</u> Trial Transcript at 9-19. In Mulvaney's presence, the common panel was sworn in the courtroom before *voir dire* in any of the three cases commenced. <u>Id</u>. at 18-19. When a jury could not be obtained from the venire questioned, requiring additional venirepersons, those on the new panel were sworn before the questioning began as required by Florida Rule of Criminal Procedure 3.360 (requiring jurors to swear they will truly try issues in case and render a true verdict according to law and evidence) in Mulvaney's presence. <u>Id</u>. at  289. The trial jurors were then administered the juror oath before the commencement of the trial and the oath was again administered in Mulvaney's presence. <u>Id</u>. at 378. Defense counsel's performance was therefore in no way deficient and he did not render ineffective assistance in this regard. See <u>Strickland</u>, <u>supra</u>.

Mulvaney alleges in ground seven that his lawyer improperly failed to admit into evidence the clothes that he had been wearing when arrested to impeach the testimony of the police officers that

---

[22]It is clearly the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987), <u>citing</u>, <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979).

[23]Florida Rule of Criminal Procedure 3.300(a) requires that the members of the venire, the group of jurors from which a jury will be selected, each swear that they will truthfully answer all questions during jury selection.

he had been found in a muddy area. Even if this Court were to find that counsel's performance was deficient as alleged, Mulvaney is unable to demonstrate that he was prejudiced by counsel's inaction.[24]  While it is true that canine Sergeant Mize described the area where he was conducting the search as "muddy," like "quicksand," and a "black, black mud pit," see Trial Transcript at 502, 507, the admission of Mulvaney's clothes would not have altered the outcome of the proceedings. While the conditions of the area may have been disputed,[25] the issue of *where* Mulvaney was ultimately discovered and arrested was not in dispute. Mulvaney himself testified that Sergeant Mize had arrested him at the subject location. Id. at 612-619. Mulvaney may be alleging that a challenge to the physical conditions of the area was important in order to contest Sergeant Mize's testimony that the mud allowed him to see only one set of footprints. Id. at 502-03. As indicated above, Mulvaney testified at trial that while the subject area was grassy, it was not muddy. Id. at 613. Again, resolving such conflicts in the evidence was a matter for the jury. As was the jury's prerogative, it rejected the defense presented, and instead believed the strong evidence admitted by the state which included testimony from the officers that they saw only one person in the subject vehicle, that Mulvaney was identified as the person who had been driving the car and tried to run into the officers, that Mulvaney was the sole person found in the area where the abandoned car had been located, and he physically resisted arrest. Id. at 415-16, 421, 452-53, 459.

Mulvaney claims in his final ground for relief, claim eight,

---

[24]The court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995)(citing Strickland v. Washington, 466 U.S. 668, 697 (1984)).

[25]Lieutenant Bamford more closely described the area as testified to by Mulvaney, testifying that the area was then "a thick mangrove, very densely overgrown brush." (Trial Transcript at 421).

that his lawyer rendered ineffective assistance when he failed to depose and then call as defense witnesses at trial his grandparents, Mr. and Mrs. Morris Solganick. Mulvaney alleges that his grandparents would have testified that the police had come to their home at around 2:30 in the morning, looking for Mulvaney, such time being after his arrest. This claim is meritless. Decisions whether to call a particular witness is generally a question of trial strategy. See generally Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004)(stating that which witnesses to call, if any, is a strategy decision that should seldom be second guessed), cert. denied, 544 U. S. 952 (2005); Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy); United States v. Guerra, 628 F.2d 410, 413 (5 Cir. 1980)("Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative").

It is first noted that, other than Petitioner's unsupported allegations, there is no competent evidence of record that his grandparents would have provided exculpatory testimony and/or were available to testify as witnesses at the time of trial.[26] As has been true of several of Mulvaney's other claims, the lack of a specific, affirmative showing of any exculpatory evidence leaves this claim purely speculative. It is also clear from review of the

---

[26]As was true in the state postconviction proceedings, Mulvaney has not supported his claim with affidavits from the prospective witnesses regarding their intended testimony or their availability as witnesses at the time of the trial.

record that trial counsel's decision not to call Mulvaney's grandparents as witnesses at trial was a matter of trial strategy. The record indicates that at the sentencing proceeding, Mulvaney vociferously complained to the trial court about counsel's representation, which included the complaint that counsel had failed to contact his grandparents and call them as defense witnesses. <u>See</u> Transcript of sentence proceeding conducted on September 28, 2001, at 41-2. (DE# 20). During the proceeding, counsel advised the court as follows:

> I told [Mulvaney], in the instance as it related to his grandparents, they're both elderly people. I spoke to them on the phone. They seemed like nice people. I didn't want them to come in and have a physical issue, heart attack, stroke under the stress, because I think they both attend dialysis. So that was one of the reasons why we never called them and *they couldn't speak to any issues as they related to fact.*

(emphasis added). <u>Id</u>. at 61. Accordingly, the record reflects that counsel did, in fact, investigate this matter, and concluded that the witnesses would not have been helpful. Moreover, even if counsel's performance could in someway be deemed deficient for failing to call Mulvaney's grandparents as witnesses at trial, Mulvaney suffered no prejudice as a result of counsel's inaction in that there is no reasonable probability that had the prospective witness(es) testified as now alleged the outcome of the trial would have been different. <u>See</u> <u>Strickland</u>, <u>supra</u>. <u>See also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11 Cir. 2002)(holding that where there is no reasonable probability that the alibi testimony would have changed the outcome of the trial, given the strength of the evidence admitted at trial, the trial court's application of Strickland's prejudice prong in postconviction proceeding was not objectively unreasonable).

In conclusion, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. <u>See</u> <u>Strickland v. Washington</u>, 466

U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, moved for judgment of acquittal, and presented a forceful closing argument.[27] Mulvaney has, therefore, failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for any or all of the reasons alleged above. As noted above, due to the efforts of trial counsel, Mulvaney's defense was successful to the extent that he was found not guilty of aggravated assault on law enforcement officer, Lieutenant Bamford, as charged in Count I of the information.

Petitioner's contention that he is entitled to an evidentiary hearing in this Court on certain of his grounds of ineffective assistance of trial counsel is meritless. Section 28 U.S.C. §2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's actual innocence. See Williams v. Taylor, 529 U.S. 420, 433-37 (2000). Mulvaney has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

---

[27]In fact, during the sentence proceeding where Mulvaney criticized trial counsel's representation, the trial court judge stated: "The Court finds [defense counsel] Mr. Kasen has rendered exceptional assistance of counsel during the entirety of these proceedings." (Transcript of sentence proceedings conducted on September 28, 2001, at 47).

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this <u>8th</u> day of April, 2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Scott Mulvaney, <u>Pro</u> <u>Se</u>
     DC# L37014
     Walton Correctional Institution
     691 World War II Veterans Lane
     DeFuniak Springs, FL 32433

     James J. Carney, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428